IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | | |
|---|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | | |
| | ) | | |
| **PLAINTIFF,** | ) | | |
| | ) | | |
| v. | ) | No. | 2:23-CR-20167-TLP |
| | ) | | |
| **DANTONI COLBERT,** | ) | | |
| | ) | | |
| **DEFENDANT.** | ) | | |

### DEFENDANT'S SENTENCING MEMORANDUM AND POSITION REGARDING SENTENCING FACTORS

**COMES NOW**, Defendant Dantoni Colbert, (hereinafter "Defendant"), by and through André C. Wharton and John Perry, his undersigned counsel of record in this cause, and pursuant to Federal Rule of Criminal Procedure 32 and LCrR32.1, respectfully submits the following Position Regarding Presentence Report, inclusive of significant issues for the Defendant's sentencing in this matter:

### **INTRODUCTION**

On January 5, 2024, Defendant pled guilty to counts one through four of the four count indictment. This matter is set for sentencing on August 27, 2024 at 11:30 a.m. It is anticipated the hearing would last approximately one hour to one and a half hours. Defendant hereby files his response to the Presentence Report filed in this cause under Doc. Number 109. Defendant further respectfully shows the Court that the following set of unique background and circumstances of

Defendant Stone warrant a downward variance in this cause from the applicable sentencing guidelines in this cause. In further support of Defendant's positions, Defendant submits as follows:

## RESPONSE TO PRESENTENCE REPORT

**I.     Nature of offense**:

The offenses at issue involves arsons at four businesses in Memphis, Tennessee. The presentence report reveals that Edward Matthews was identified as the individual pouring liquid from a red can immediately before igniting the fires at the three of the scenes. Defendant was identified on a Facebook live video as one of two subjects making comments about the arsons at Washington Tax Service. The proof contained in the presentence report reveals that Defendant's cellphone was located near the towers within proximity to the location of the fires. Also, a similar vehicle linked to the Defendant was observed by a witness on the scene of one of the fires, 3503 Ramill Road. Essentially, based on the presentence report, Defendant is tied to the crimes at issue by the Facebook videos, his phone's presence at the scene and by information that was being communicated between him and co-defendant Matthews.

Defendant has pled guilty to counts one through four of the indicted offenses on May 15, 2024. Thus, he has acknowledged guilt and intends to accept responsibility for his role in the offenses. It is important to point out as explained before the plea colloquy that respectfully, Defendant has always perceived his role in the offenses as being less than that of Defendant Matthews. While the law considers conspiracy and accomplice liability to include the nature of Defendant's conduct, Defendant respectfully maintains that he did not participate (and would not have participated) in any actual handling of explosives or flammable accelerants used to commit these offenses. Defendant understands that a conspiracy or accomplice liability does not necessarily require him to be as culpable as codefendant Matthews in order to be guilty.

2

Finally, while arson is indeed a serious crime and Defendant will never seek to minimize the offense, in this case there were no injuries reported and apparently the fires all occurred at a time when the businesses were apparently unoccupied.

**A. Defendant submits that a minimal or minor participant role reduction departure is warranted.**

Pursuant to Section U.S.S.G. § 3B1.2, a defendant may be entitled to a 2, 3 or 4 level reduction if the Defendant had a mitigating role in the offense. If a defendant was a minimal participant in any criminal activity, decrease by 4 levels. U.S.S.G. § 3B1.2(a). If the defendant was a minor participant in any criminal activity, decrease by 2 levels. U.S.S.G. § 3B1.2(b). For cases in between, the guidelines provide that a defendant can receive a 3 level reduction. Here, Defendant's role was clearly less than that of codefendant Matthews. Aside from communications and his presence, there is no indication that Defendant ever participated in actually the setting fire to any of these properties. In fact, aside from mere presence on particular scenes it is not asserted that Defendant ever left the vehicle while Matthews was conducting his actions. Accordingly, Defendant moves the Court for at least a three (3) level reduction pursuant to U.S.S.G. § 3B1.2.

**B. Moreover and in the alternative, Defendant <u>objects</u> to paragraph no. 36 that he was an organizer, leader, manager or supervisor in these offenses.**

Paragraph no. 36 of the presentence report contends that Defendant was a organizer, leader, manager, or supervisor. However, the facts as contained in the presentence report do not support such a conclusion. <u>See United States v. Vandeberg</u>, 201 F.3d 85. In determining whether a defendant qualifies as a leader, organizer, manager or supervisor, a trial court should consider a number of factors, including but not limited to, the defendant's exercise. "A defendant must have exerted control over at least one individual within a criminal organization for the enhancement to be warranted." <u>Id.</u> at 811. In <u>Vandeberg</u>, while the defendant "provided information crucial to

3

helping [the codefendant] burglarize the home, "there [was] no indication that Vandeberg either recruited [codefendant] or exercised any authority over him." Id. (citing United States v. Martinez, 181 F.3d at 798-99) Moreover, "Vandeberg neither claimed a right to a larger share of the fruits of the crime, nor took a leadership role in planning the details of the offense." Id.

Here, the proof is lacking that Defendant exercised control over any individual involved in the charged offenses. While there may be proof that he provided information or was present when one or more of the offenses occurred, it is not established that Defendant recruited let alone controlled the details of the offense or that Defendant stood to or did gain a larger share of whatever proceeds were received. In short, the proof is insufficient to establish Defendant as a leader in this offense and said enhancement application should be denied.

## APPLICABLE LAWS GOVERNING SENTENCING

It is well established that a mandatory application of the United States Sentencing Guidelines is no longer the appropriate standard for sentencing purposes. *United States v. Booker*, 543 U.S. 220 (2005). As noted more recently in *Irizarry v. United States*, "[s]entencing is a fluid and dynamic process . . . ." 553 U.S. 708, 715 (2008) (citing *United States v. Vega-Santiago*, 519 F.3d 1 (CA1 2008). "The sentencing judge is in a superior position to find facts and judge their import under § 3553 in the individual case." *Gall v. United States*, 552 U.S. 38, 51 (2007) (quotations omitted). Moreover, "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue." *Gall*, 552 U.S. at 52 (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)). Further, it has been repeatedly determined that considerations of an individual's mental health, childhood trauma, among other things, are relevant to sentencing under 18 U.S.C.

§ 3553(a)**.** *United States v. Sarontay Deon Banks*, 722 F. App'x 505, 511-12 (6th Cir. 2018); *United States v. Robinson*, 778 F.3d 515, 523 (6th Cir. 2015); *United States v. Ivory*, 558 F. App'x 643, 643-44 (6th Cir. 2014).

## **DEFENDANT'S SENTENCING POSITIONS**

Defendant submits that the following sentencing considerations are relevant to his case and respectfully asks this Court to take them into account in determining an appropriate sentence:

**I. 18 U.S.C. § 3553(a) Factors for the Court's Consideration to Warrant a Variance.**

Defendant submits that the following sentencing considerations are relevant and respectfully asks the Court to take them into account in determining an appropriate sentence for the Defendant, including the application of a variance pursuant to Title 18 U.S.C. §3553. Further, as it is now well established, the United States Sentencing Guidelines are not mandatory, but rather advisory in nature. In fact, the Sixth Circuit Court of Appeals noted the importance of this by stating that when a court "The Court stated that a sentencing decision by a court's decision may be unreasonable if it "did not appreciate the non-mandatory nature of the guidelines." *United States v. Phinazee*, 515 F.3d 511, 514 (6th Cir. 2008). Moreover, it has been repeatedly determined that a defendant's adverse childhood experiences are relevant to sentencing, and in *United States v. Ivory,* the court held that district court was reasonable in considering the defendant's difficult childhood and granting a downward variance from the guideline range. 558 F. App'x 643, 643-44 (6th Cir. 2014); *see also, United States v. Sarontay Deon Banks*, 722 F. App'x 505 (6th Cir. 2018).

In this case, as it can be gleaned from the presentence report, Defendant began interacting with the juvenile system at the early age of thirteen, with disorderly conduct and later assault delinquencies. Defendant's subsequent interaction with the criminal justice system continued to

5

consist of assaults, domestic situations as well as other charges related to traumatic incidents with other individuals. However to understand Defendant's criminal history, it is critical to analyze his personal and family data discussed on page 24, beginning in paragraph 90. As a child, Defendant's father was in and out of jail. His mother suffers from diabetes and is a breast cancer survivor. Moreover, Defendant is one of nine children. His mother worked multiple jobs to provide for the family. Notably, Defendant is the only male child and has eight sisters per the presentence report. Defendant grew up in the impoverished and often violent public housing community known as Dixie Homes. Defendant reported the area was rife with crime, poverty and gangs. Since childhood, Defendant was smaller for his age and prone to being bullied. Not surprisingly, without a positive and consistent male figure in the home, Defendant eventually began to get into trouble.

Defendant was later the victim of gunshot wounds and to this day suffers with recurring pain from his injuries. The injuries resulted in several complications from his ankle to his stomach. The presentence report, paragraph nos. 100-107, describes the significant health issues Defendant has faced since 2014 through 2021, including cardiac issues, potential clotting, osteomyelitis and leg infection requiring follow up care and hospitalizations. Also significant, is Defendant's experimentation with opioids after the loss of a friend in September 2023. It was also noted that Defendant suffered with multiple stressors including about gang retaliation and trauma resulting from his being shot. Defendant also acknowledged marijuana use in high school and by his report, this was a daily habit. ¶114. He also consumed alcohol, but it appears that the marijuana was his most difficult substance abuse issue.

Defendant's educational history reflects difficulty beginning in about the ninth grade. This coincided with the Defendant's time period wherein he began having contact with the juvenile court system. What is quite evident from evaluating Defendant's background and characteristics

6

is that his upbringing was far from ideal. His father was involved on cyclically due to incarceration and his mother was frequently working to provide for the household. Unfortunately, different individuals react differently to childhood traumas. Accordingly, it respectfully submitted that Defendant's childhood was likely the marker for all of his subsequent involvement in the criminal justice system. Our courts have acknowledged the effects childhood traumas can have on defendants who appear before the court system.

Accordingly, Defendant's traumatic childhood can justify a downward variance given the substantial impact of these experiences on him. In one case, The Sixth Circuit Court of Appeals found that the defendant's family history, including the loss of his parents at a young age reasonably justified the Court's decision to allow for a downward variance. *United States v. Collington*, 461 F.3d 805, 809 (6th Cir. 2006). Here, Defendant's parents were not married and his father was incarcerated at an early age. His mother was diagnosed with diabetes and breast cancer. Moreover, Defendant's parents' strife coupled with his childhood environment resulted in his early exposure to the criminal element and substance abuse. There factors should be significantly factored when considered Defendant's subsequent conduct, criminal history and the instant offense.

Defendant acknowledges his role in the charge offenses, and while he does not seek to depreciate his involvement, Defendant seeks to emphasize that he never was involved in actually setting fire to any of the properties charged in the indictment. Defendant has learned from the situation and realized that even limited association and involvement can result in a conspiracy and accomplice liability. Given his background and exposure, Defendant and society could likely benefit significantly from Moral Reconation Therapy or classes that will assist him in dealing with daily decisions by exercising sound and safe judgment. It is important to point out the presentence

report indicates in paragraph no. 112 that Defendant "was not referred for mental health treatment" which was surprising given Defendant's life containing several adverse childhood and traumatic experiences, even later as an adult.

Finally, it is noteworthy that notwithstanding Defendant's childhood background and unfortunate exposure to the criminal justice system, he does have a significant employment history which is reflective of his positive attributes, given the right setting and circumstances, as the presentence report reflects an employment history with several different employers. This suggests that with the right balance therapy and counseling, after intensive mental health evaluation and recommendations, Defendant can lead a safe, law abiding and productive life and be gainfully employment. However, the complex childhood he endured is going to require an individualized approach to achieve sustained success for Defendant, but given his decisions have resulted in now mandatory incarceration, Defendant understands the urgency of now in getting he help he truly needs to be safe and successful and to comply with the law.

**WHEREFORE, PREMISES CONSIDERED**, Defendant respectfully requests the Court to take into consideration all contributing factors articulated herein, particularly the circumstances surrounding the Defendant's traumatic upbringing, and requests that the Court allow him to serve a sentence of sixty months followed by a post-supervised release wherein Defendant can continue his medical and mental health rehabilitation, obtain gainful employment and continue to contribute positively to his family and in his community.

**RESPECTFULLY SUBMITTED,**

        s/André C. Wharton_____
        André C. Wharton, #022588
        ***THE WHARTON LAW FIRM***
        1575 Madison Avenue
        Memphis, Tennessee 38104
        901-726-6884
        Attorney for Defendant

**CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that a true copy of the foregoing Defendant's Sentencing Memorandum and Position Regarding Sentencing Factors was forwarded by electronic means via the Court's electronic filing system and/or email to Gregory Wagner and Stephen Hall, Assistants U.S. Attorney, 167 N. Main, Suite 800, Memphis, TN 38103, this the 6th day of September, 2024.

        \_s/André C. Wharton_____